Elayne R. Leand
vs. Law No. 88384.
Clark, Childs & Co.

May 20, 1932.

TANNER, J. This case is heard upon plaintiff's demurrer to defendants' special pleas and further special pleas.

The declaration alleges in substance that the plaintiff ordered the defendants to sell shares of stock at 83⅞ dollars per share or better; that the defendants later in the day, to wit: said October 31, 1929, sent the plaintiff a written confirmation of sale, stating that said stock had been sold at $84 a share and what the net amount due the plaintiff was after deducting commission and transfer taxes, and further specifying as follows:

"In accordance with instructions, we have this day executed the following orders for your account and risk under the following terms and conditions, which, in consideration of our services as brokers in the premises, are to be considered as a part of the contract. * * *

"IMPORTANT:—(3) Please notify us at once of any error or omission noted in the following report, which, in default of such notification within 48 hours, shall be considered as correct and conclusive, and all the conditions above noted, understood and agreed to.

Clarke, Childs & Co."

The further allegation of the fifth count was that said contract between the plaintiff and defendants was also subject to the following rule of the New York Stock Exchange, promulgated by the Committee of Arrangements in Bulletin C-3802 on October 16, 1929, as follows:

"With reference to the following rule of the Exchange (Section 10 of Chapter II of the Rules adopted by the Governing Committee pursuant to the Constitution):

'The price at which an order is executed on the Exchange shall be binding, notwithstanding the fact that an erroneous report in respect thereto may have been rendered; and no member shall assume or pay any part of the difference between the price at which an order is executed and the price at which it may have been erroneously reported.'

"The Committee of Arrangements is of the opinion that an erroneous report which is covered by the tape should be changed not later than 2:15 p. m. on the full business day following the day of the transaction. The Committee therefore rules, with a view to applying a penalty for what it regards as undue negligence, that no such change may be made after that hour.";

that the sale of the stock was covered by the tape and fell within the above ruling; that no change was made in accordance with said rule before 2:15 p. m. on the full business day following the date of the transaction; that this resulted in damage to the plaintiff; that at a later date the stock was sold for a considerably less sum than named in said alleged contract.

The defendants in their special pleas to said fourth and fifth counts alleged that they, through the specialist permitted by the Stock Exchange to handle and record transactions involving the sale and purchase of said particular plaintiff's stock, offered such stock for sale, and that, in the ordinary course of business, they received the verbal report of the sale of such stock at $84 and conveyed such report to the agent of the plaintiff on the afternoon of said 31st day of October, 1929, at, to wit: 2:40 P. M.; that on the next day upon which the Stock Exchange was open, to wit: November 4, 1929, the defendants were informed by said specialist that the report of the sale of such stock at 84 had been erroneous; that,

in fact, no such sale could have been made for the reason that the last transaction involving such stock at a price which would have enabled the execution of the plaintiff's order occurred at, to wit: 12:10 P. M. of said 31st day of October, 1929, which was prior to the time of the receipt of the plaintiff's order at the defendants' Providence office; that said defendants informed the plaintiff at 3:55 P. M. on the 4th day of November, 1929, that the report rendered to her on the 31st day of October, 1929, was erroneous and that said stock had not been sold.

The plaintiff argues that said written confirmation of sale became a contract between the plaintiff and defendants by virtue of a clause stating that in default of notification of error within 48 hours, from the plaintiff, the account stated in said confirmation shall be considered as correct and conclusive, and all the conditions agreed to. But in Meyer on the Law of Stock Brokers and Stock Exchanges, 1931 ed., pages 439 to 444, it is stated as law that while printed conditions may constitute a contract by silent acceptance, whether they do or not in a particular case is almost invariably a question of fact for the jury. It is a question of whether a confirmation creates a contract and whether there was a duty on the part of the customer to repudiate under penalty of having a contract imposed upon him, since the printed conditions constitute at most an offer which the customer may accept or reject.

There does not appear to be any allegation in the declaration that there was any action or failure to act, caused by the written confirmation, which caused damage. We gather from the statements of the plea that there was no opportunity for the plaintiff to have sold said stock at a price of $84 or better between the time when her orders were given and the time that she received notification that the re-

ported sale was erroneous, and there would, therefore, be no estoppel.

As to the further allegation that said contract between the plaintiff and defendants was subject to the rule of the New York Stock Exchange already quoted, it will be noted that in the first paragraph quoted the rule applies only to an order which has been *executed* on the exchange. It, therefore, would seem to be a fair argument that the second paragraph of the rule would apply only to cases of orders which were executed but reported at an erroneous price. It is clear from the declaration and pleas that this order was not executed at all between the time it was received and the time when notice of the erroneous report was given.

Even if said second paragraph could be said to apply to this case, we think it might well be a question for the jury as to whether it should be applied in a case like the present, where it is stated in the pleas and is a matter of common knowledge that the Stock Exchange was obliged to close for four days because there was such a flood of business that the Exchange could not keep up with the records. It might well be that the penalty described in said second paragraph would not be enforced because it was humanly impossible to carry it out, and it would seem doubtful if the Stock Exchange would insist upon such a speedy report of an erroneous sale under such circumstances.

The plaintiff's demurrer to the special pleas of res adjudicata is sustained since no objection is offered thereto.

The plaintiff's demurrer to the fourth and fifth special pleas is overruled.

For plaintiff: William H. Edwards, J. C. Semonoff.

For defendant: Cooney & Cooney.